UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SECURA INSURANCE, A MUTUAL
COMPANY A/S/O KIEL THOMSON                                    PLAINTIFF

v.                                              CIVIL ACTION NO. 3:18-CV-780-CRS

OLD DOMINION FREIGHT LINE, INC.                                DEFENDANT

## MEMORANDUM OPINION

I.     Introduction

This case is before the Court on Defendant Old Dominion Freight Line, Inc.'s Partial Motion to Dismiss or Alternatively for Judgment on the Pleadings. DN 8. Plaintiff SECURA Insurance has responded. DN 11. Old Dominion replied. DN 12. Therefore, this matter is ripe for review. Finding that the Carmack Amendment preempts SECURA's claims under bailment and breach of contract theories, the Court will grant Old Dominion judgment on the pleadings as to those claims.

II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).[1] To the extent a Rule 12(c) motion challenges the pleading of plaintiff's complaint, the inquiry is equivalent to that used under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Therefore, to survive a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] Old Dominion couches their motion as a "Partial Motion to Dismiss or Alternatively for Judgment on the Pleadings." A Rule 12(b)(6) motion to dismiss must be made "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b). Old Dominion's motion was filed on the same day as its answer, with the answer being docketed first. Therefore, the proper inquiry is under Rule 12(c).

1

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not contain "detailed factual allegations," yet must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. Tenn. Dept. of Child Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In undertaking this inquiry, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]" *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

**III.    Factual and Procedural Background**

Kiel Thomson, one of SECURA's insureds, purchased custom glass windows from Zeluck Architectural Windows & Doors in Brooklyn, New York. DN 1 at 2. Thomson then entered into a contract with Old Dominion to have those windows shipped to his construction site in Louisville, Kentucky. *Id*. On arrival, the windows were discovered to be broken and unusable. *Id*. Thomson filed a claim with SECURA, who paid out $21,076.83 pursuant to his insurance policy. *Id*. SECURA then brought suit against Old Dominion as subrogee of Thomson.

2

*Id*. The claims in the complaint include a statutory claim under the Carmack Amendment and common law bailment and breach of contract claims. *Id*. at 2–5. Old Dominion has now moved to dismiss the bailment and breach of contract claim as preempted by the Carmack Amendment. DN 8.

**IV.     Discussion**

The Constitution provides that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding." U.S. CONST. art. VI, cl. 2. To the extent state laws conflict with federal law, they are preempted and "without effect." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (quoting *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)). The "ultimate touchstone" in the preemption inquiry is "[t]he purpose of Congress." *Id.* (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (additional citation omitted)) (alteration in original). "Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose." *Id.* The structure and purpose of the statute can demonstrate preemptive intent if "the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law." *Id.* at 76–77 (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).

In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce Act of 1877. *See* 49 U.S.C. § 14706. The Carmack Amendment spells out rights, duties, and liabilities of shippers and carriers when it comes to cargo loss. The purpose, the Supreme Court recognized, was to bring uniformity to a chaotic area of varying state law:

> Some states allow carriers to exempt themselves from all or a part of the common-law liability by rule, regulation, or contract; others did not. The Federal courts sitting in the various states were following the local rule, a carrier being held liable in one court when, under the same state of facts, he would be exempt from liability

> in another. Hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or a carrier whose lines were extensive, to know, without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The congressional action has made an end to this diversity, for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transactions. This was doubtless the purpose of the law; and this purpose will be effectuated, and not impaired or destroyed, by the state courts' obeying and enforcing the provisions of the Federal statute where applicable to the fact in such cases as shall come before them.

*Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913) (citation omitted). To accomplish that goal, the Carmack Amendment's preemption is extremely broad:

> That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

*Adams Express Co.*, 226 U.S. at 505–06. Indeed, it is "comprehensive enough to embrace responsibility for all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation, which, as defined in the Federal act, includes delivery." *Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 197 (1916). In sum, claims survive this preemption only when they are "separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods." *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997). *See also Vitramax Grp., Inc. v. Roadway Express, Inc.*, No. Civ. A. 05-87-C, 2005 WL 1036180, at *1 (W.D. Ky. May 3, 2005) (the Carmack Amendment "preempts state and common law claims and remedies for cargo damages in interstate transport.") (citations omitted).

Here, in addition to the Carmack Amendment claim, SECURA brings common law claims for bailment and breach of contract. Courts have repeatedly found bailment claims preempted by the Carmack Amendment. *See* e.g. *Excel, Inc. v. S. Refrigerated Transp., Inc.*, 835 F. Supp. 2d 472, 480 (S.D. Ohio 2011) ("Excel has not pleaded sufficient facts to plausibly suggest a cause of action for . . . bailment based on obligations independent of the shipper-carrier relationship."); *Strong v. Passport Auto Logistics, LLC*, No. 16-14169, 2018 WL 352891, at *4 (E.D. Mich. Jan. 10, 2018) ("bailment claim must be dismissed as preempted by the Carmack Amendment"); *Malone v. Mayflower Transit, Inc.*, 819 F. Supp. 724, 725 (E.D. Tenn. 1993) (finding bailment claim preempted). The same goes for breach of contract. *See Carousel Nut Prods., Inc. v. Milan Express Co., Inc.*, 767 F. Supp. 142, 143 (W.D. Ky. 1991) ("The Carmack Amendment applies to a wide range of breaches of contract of carriage, and preempts state law causes of action and remedies."); *Vitramax*, 2005 WL 1036180, at *1 ("The plaintiff's common law claim[] for . . . breach of contract . . . [is] preempted by the Carmack Amendment."); *Cent. Transp. Intern., Inc. v. Alcoa, Inc.*, No. 06-CV-11913-DT, 2006 WL 2844097, at *2 (E.D. Mich. Sept. 29, 2006) ("courts have recently held that state law claims, including breach of contract claims, are preempted by the Carmack Amendment.").

Here, the bailment and breach of contract claims arise from the same incident as the Carmack Amendment claim—from the alleged damage to the custom glass windows alone. *See* DN 1 at 3 ("while in the Defendant's exclusive possession and control, nearly all, if not all, of the product in the form of windows was shattered and broken during transportation from the loading point to the delivery point"); *Id*. at 4–5 ("Defendant defaulted and/or breached this Contract/Bill of Lading when they negligently and carelessly caused damage to be levied against Plaintiff's Insured's product while in the exclusive possession of the Defendant prior to

delivery"). They do not arise from a "separate and independently actionable harm[] that [is] distinct from the loss of, or the damage to, the goods." *Gordon*, 130 F.3d at 289. Therefore, the claims are preempted by the Carmack Amendment.

V.   **Conclusion**

SECURA's bailment and breach of contract claim do not arise from harms separate and independent from the damage to the custom glass windows. As a result, the claims are preempted by the Carmack Amendment. Therefore, the complaint does not state a plausible claim on which relief can be granted as to those claims and Old Dominion's motion for judgment on the pleadings will be granted.

A separate order will be entered in accordance with this opinion.

March 11, 2019

               Charles R. Simpson III, Senior Judge
               United States District Court