UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**SECURA INSURANCE, A MUTUAL**
**COMPANY A/S/O KIEL THOMSON**                          **PLAINTIFF**

vs.                                                      **CIVIL ACTION NO. 3:18-CV-00780-CRS**

**OLD DOMINION FREIGHT LINE, INC.**                            **DEFENDANT**

## MEMORNADUM OPINION

**I.**      **Introduction**

This case is before the Court on Defendant Old Dominion Freight Line Inc.'s ("ODFL") motion for summary judgment. DN 27. Plaintiff Secura Insurance ("Secura") filed a response. DN 28. ODFL replied. DN 30. The matter is ripe for review. For the following reasons, the Court will grant ODFL's motion for summary judgment.

**II.**      **Factual Background**

This case arises out of damage sustained to a shipment of glass windows. Kiel Thomson, one of Secura's insureds, ordered custom glass windows from Zeluck Architectural Windows & Doors. DN 1 at 2. Thomson contracted with ODFL, a commercial motor carrier, to have the windows transported from Brooklyn, New York to Louisville, Kentucky. *Id*. The parties agreed ODFL would transport the windows pursuant to ODFL's Internet Straight Bill of Lading ("Bill of Lading"). DN 27-1 at 2; DN 27-2 at 15–16. The Bill of Lading was governed by ODFL's Rules 100 Tariff. DN 27-1 at 2. ODFL's Rules 100 Tariff, in relevant part, provides that "Carrier must receive all claims for cargo loss or damage including all supporting documentation within nine (9) months of the date of delivery, or, if lost, the date delivery was anticipated." DN 27-2 at 8.

When the windows arrived on July 19, 2017, Thomson discovered that the windows were damaged. DN 1 at 2. That same day, Thomson sent an email to ODFL ("July 19, 2017 email") stating:

> Bill of lading #07906084756 BKN has arrived with some damage. We are documenting the damage with pictures. Please advise as to the insurance liability, and the process required when making a claim.

DN 27-2 at 12. ODFL responded: "Please note that on the Security Divider service-we are not Liable [sic] for any damages-since it was a shipper load and off load." *Id*. at 13. Thomson filed a claim with Secura, who paid $21,076.83 pursuant to Thomson's insurance policy. DN 1 at 2. Thirteen months after Thomson's email to ODFL, Secura's counsel sent a letter ("August 21, 2018 letter") to ODFL claiming $21,076.83 in damages. *Id*. ODFL denied Secura's claim as untimely because Seucra submitted the August 21, 2018 letter after the nine-month window as required by ODFL's Rules 100 Tariff. DN 27-1 at 3. Following ODFL's denial, Secura filed this lawsuit.

Secura originally brought three claims against ODFL: (1) a statutory claim for damages under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, (2) bailment, and (3) breach of contract. DN 1. ODFL moved for judgment on the pleadings for the bailment and breach of contract claims. DN 11. This Court granted that motion and held that Secura's bailment and breach of contract claim were preempted by the Carmack Amendment. DN 13. The statutory claim under the Carmack Amendment is Secura's sole remaining claim.

### III. Legal Standard

Summary judgment is appropriate when the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

247–48 (1986). A genuine issue for trial exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id*. In undertaking this analysis, the Court must view the evidence in the light most favorable to the non-moving party. *Scott v. Harris,* 550 U.S. 372, 378 (2007).

The party moving for summary judgment bears the burden of proof for establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). They can meet this burden by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the…presence of a genuine dispute." Fed. R. Civ. P. 56(C)(1). This burden can also be met by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

**IV.   Discussion**

In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce Act of 1877. *See* 49 U.S.C. § 14706. The Carmack Amendment spells out rights, duties, and liabilities of shippers and carriers when it comes to cargo loss. Regulations promulgated pursuant to the Secretary of Transportation's authority govern the presentation and adjudication of claims under the Carmack Amendment. *See* 49 C.F.R.§ 370.1. These regulations provide the minimum filing requirements for a claim of loss or damage to cargo. 49 C.F.R. § 370.3 (b). ODFL argues that Secura failed to submit a claim that substantially complied with the requirements of § 370.3 (b) and is therefore entitled to summary judgment. DN 27-1 at 8. Secura responds with three arguments: (1) Thomson's email from July 19, 2017 constituted a claim that substantially complied

with the requirements of § 370.3 (b), (2) ODFL's response to Thomson's alleged claim was deficient, and (3) ODFL's tariff was not incorporated by reference into the Bill of Lading, and Thomson was not the "shipper" for the purposes of the Bill of Lading. *See* DN 28. The Court will address each argument.

### A. Thomson's July 19, 2017 Email

The July 19, 2017 email was Thomson's and Seucra's only contact with ODFL prior to the August 21, 2018 letter from Secura's counsel. ODFL argues that this email did not substantially comply with the requirements of § 370.3 (b) and therefore did not constitute a claim under the regulation. Consequently, ODFL argues that the August 21, 2018, correspondence from Secura's counsel requesting $21,076.83 in damages was outside of the nine-month window in which ODFL's Rules 100 Tariff requires claimants to submit all claims for cargo loss or damage. Even viewing the facts in the light most favorable to the Secura, the July 19, 2017 email did not substantially comply with the requirements of § 370.3 (b). Accordingly, since it is undisputed that the August 21, 2018 correspondence from Secura's counsel did not fall within the nine-month window, ODFL is entitled to summary judgment.

Section 370.3 (b), in relevant part, provides:

> (b) Minimum filing requirements. A written communication from a claimant, filed with a proper carrier *within the time limits specified in the bill of lading* or contract of carriage or transportation and:
> (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property,
> (2) Asserting liability for alleged loss, damage, injury, or delay, and
> (3) Making claim for *the payment of a specified or determinable amount of money*, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage; Provided, however, that procedures are established to ensure reasonable carrier access to supporting documents

49 C.F.R. § 370.3 (b) (emphasis added).

In the Sixth Circuit, a claim for loss or damage must substantially comply with 49 C.F.R. § 370.3 (b)[1] or else recovery is precluded. *Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 713 (6th Cir. 1999). The requirements "provide the carrier with notice of the nature of the baggage or property that is lost or damaged, the fact that the claimant intends to hold the carrier responsible, and a reasonably accurate indication of the value of the claim." *Id*. Further, "the purpose of the claim regulation is not to permit the carrier to escape liability but to insure [sic] that the carrier has enough information to begin processing the claim." *Id*. The Sixth Circuit held that a plaintiff's claim that stated damages were "to be determined but not to exceed $150,000" substantially complied with the "specified" or "determinable" amount of money requirement under § 370.3 (b). *Id*.

Even viewing the facts in the light most favorable to Secura, the July 19, 2017, email does not substantially comply with the requirements of 49 C.F.R. § 370.3 (b). The email is three sentences long:

> "Bill of lading #07906084 BKN has arrived with some damage. We are documenting the damage with pictures. Please advise as to the insurance liability, and the process required when making a claim."

DN 27-2 at 12. The email does not include a specified or determinable amount of money that Thomson was seeking from ODFL. Indeed, there is no damage estimate included whatsoever. Without any reference to any amount Thomson was seeking, the email cannot comply with 49 C.F.R. § 370.3 (b), even under the more lenient substantial compliance standard articulated by the Sixth Circuit. Therefore, ODFL is entitled to summary judgment.

---

[1] In *Trepel,* the Sixth Circuit discussed 49 C.F.R. § 1005.2 rather than 49 C.F.R. § 370.3. The regulations found in 49 C.F.R. § 370.3 went into effect in 1997 and are also found in 49 C.F.R. § 1005.2. The two provisions are identical.

Secura argues that the email substantially complied § 370.3 (b). Secura contends that by stating there was damage in the July 19, 2017 email, and subsequently providing a particularized damage estimate in the August 21, 2018 correspondence, the email provided ODFL enough information to start its investigation into the claim. In other words, Secura argues Thomson's initial email provided a placeholder for a more specified claim and satisfied the nine-month filing requirement provided in ODFL's Rules 100 Tariff.[2] It is true that § 370.3 (b) does not define "specified" or "determinable" with regard to the amount of money in a claim. But, Secura's argument would effectively erase those words from the regulation. Further, Secura provides no authority for the proposition that an "initial notice of claim" can act as a placeholder for a more definite claim and ultimately satisfy the requirements of § 370.3 (b). This interpretation would effectively replace the substantial compliance standard articulated by the Sixth Circuit with a minimal compliance standard. Without clear support from Sixth Circuit precedent, the Court refuses to endorse Secura's interpretation of 49 C.F.R. § 370.3 (b) and its application of the substantial compliance standard.

B.    **ODFL's Response to the July 19, 2017 Email**

Secura argues that granting ODFL's motion for summary judgment when ODFL failed to provide an insurance claim form in response to the July 19, 2017 email would "reward them for circumventing the proper claims process that the Plaintiff's Insured specifically requested to be made aware of." DN 28 at 5. This argument is easily disposed of.

ODFL responded to Thomson's July 19, 2017 email by stating "Please note that on the Security Divider Service-we are not liable for any damages-since it was a shipper load and off load." DN 27-2 at 13. First, ODFL's response does not negate the deficiency of the July 19, 2017

---

[2] The Court also notes that even Secura's counsel refers to the July 19, 2017 email as "their initial notice of claim." DN 28 at 5.

email. Second, Secura cites no authority for the proposition that a carrier's initial denial of liability excuses a claim's requirements under § 370.3 (b) or excuses a claimant from the terms and conditions of a carrier's tariff. Accordingly, Secura's argument is without merit.

### C. ODFL's Tariff and Bill of Lading

Secura further argues that, regardless of whether the July 19, 2017, email constituted a valid claim, (1) ODFL's tariff was not incorporated by reference into the Bill of Lading, and (2) Secura was "not the shipper" for purposes of the Bill of Lading and cannot be bound by ODFL's Rules 100 Tariff. Both arguments are without merit.

First, Secura tepidly insinuates that the ODFL's Rules 100 Tariff is not incorporated by reference into the Bill of Lading because it cannot read the Bill of Lading provided by ODFL. *See* DN 28 at 6, footnote 1. Secura asks ODFL to produce a more legible copy to dispel any confusion. *Id*. The Court is sympathetic to Secura's plight; the submitted Bill of Lading is exceedingly difficult to read. But, "OD Rules 100," referencing ODFL's Rules 100 Tariff, is included twice under the section "Accessorial Services Requested." DN 27-2 at 5. Further, Geoff Stephany's declaration supports the assertion that ODFL's Rules 100 Tariff is incorporated by reference and governed the terms of the shipment. DN 27-2 at 1 ¶ 6. It is clear that the Bill of Lading incorporated ODFL Rules 100 Tariff by reference and the ODFL Rules 100 Tariff governed the terms of the shipment. Accordingly, Secura's argument is without merit.

Second, Secura contends that ODFL's reliance on *Fireman's Fund McGee vs. Landstar Ranger, Inc.*, 250 F. Supp. 684, 689 (S.D. Tex. 2003) in its motion for summary judgment is misplaced. The court in *McGee* stated that a "shipper" must request a copy of the carrier's tariff if the "shipper is unaware of the 'rate, classifications, rules and practices…agreed to between the shipper and carrier.'" *Id*. Secura correctly notes that Thomson was the consignee, not the "shipper,"

7

for the transaction at issue. DN 28 at 6. Presumably, while Secura did not fully articulate this argument in its response, Secura argues that as the consignee, Thomson did not have an affirmative obligation to request a copy of ODFL's Rules 100 Tariff. And, therefore, Thomson cannot be bound by the terms of ODFL's Rules 100 Tariff because Thomson had no knowledge of the tariff's terms.

As a consignee, Thomson is presumed to know the effect and applicability of ODFL's Rules 100 Tariff. "[C]onsignors, carriers and consignees are all presumed to know the existence, effect and applicability of tariff provisions." *Atchison, T.&S.F. Ry. Co. v. Springer*, 172 F.2d 346, 349 (7th Cir. 1949) (citing *American Railway Express Co. v. Daniel*, 269 U.S. 40, 42 (1925)); *see also Howe v. Allied Van Lines,* 622 F.2d 1147, (3d Cir. 1980), *cert. denied*, 449 U.S. 992, 101 (1980) (holding military servicemen consignees were limited to remedies available under the contract negotiated by the government and carriers). Further, both the Bill of Lading and ODFL's Rules 100 Tariff bind Thomson as the consignee. The Bill of Lading provides that "any additional party with an interest to any of said property" and "every service to be performed hereinafter" is subject to ODFL's Rules 100 Tariff. DN 27-2 at 5. Further, ODFL's Rules 100 Tariff provides, "[t]he person and/or entity who tenders the shipment to ODFL represents and warrants it has the authority to bind itself, and any other person and/or entity with an interest in the cargo transportation, to the limitation of liability and other terms set forth in this Tariff." DN 30-1 at 7. Even considering Secura's implied argument, Secura presents no authority for the proposition that a consignee is exempt from a carrier's tariff if the consignee did not have knowledge of the tariff's terms. Accordingly, Secura's argument is without merit.

V.     **Conclusion**

Thomson's July 19, 2017 email did not substantially comply with 49 C.F.R. § 370.3 (b). The August 21, 2018 correspondence from Secura's counsel to ODFL was outside of the nine-month window in which ODFL's Rules 100 Tariff requires all claims for cargo loss or damage to be submitted. Therefore, neither Thomson or Secura filed a valid claim under the Carmack Amendment for the damage sustained to the glass windows. For the reasons stated herein, the Court will grant ODFL's motion for summary judgment.

A separate order will be entered in accordance with this opinion.

March 20, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**